[Cite as *State ex rel. Columbus Distrib. Co. v. Williams*, 2015-Ohio-4253.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. <br> The Columbus Distributing Co., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 14AP-483 |
| | : | |
| Scott C. Williams and <br> Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 13, 2015

*Michael Soto,* for relator.

*Mitchell+Pencheff, Fraley, Catalano & Boda Co., Daniel K. Boda* and *Andrew F. Fuchs,* for respondent Scott C. Williams.

*Michael DeWine*, Attorney General, and *Patsy A. Thomas,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

BRUNNER, J.

{¶ 1} Relator, The Columbus Distributing Co., has filed this original action requesting the court to issue a writ of mandamus directing respondent Industrial Commission of Ohio ("commission") to vacate the June 7, 2011, October 1 and November 26, 2012, and April 29, 2014 orders of the commission's staff hearing officer and to deny the requests of respondent Scott C. Williams for reactivation of his claim, which previously had been allowed for low back sprain and herniated disc L5-S1, and for additional treatment and diagnostic testing.

{¶ 2}    The matter was referred to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals.  Our magistrate's decision included findings of fact and conclusions of law and is appended hereto.

{¶ 3}    Recommending that we deny a writ of mandamus, the magistrate concluded that the commission appropriately considered and found that Williams was entitled to reactivate his claim and then proceeded to deny his treatment request on account of its vagueness.  No objections to the magistrate's decision have been filed.  We find no error of law or other defect in the decision.  Therefore, we adopt the decision as our own, including the findings of fact and conclusions of law contained therein.

{¶ 4}    In accordance with our magistrate's decision, we deny the requested writ of mandamus.

*Writ of mandamus denied.*

KLATT and DORRIAN, JJ., concur.

# APPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State of Ohio ex rel.                           :
The Columbus Distributing Co.,

                                       :

        Relator,

                                       :

v.                                                                                  No.  14AP-483

                                       :

Scott C. Williams and                                         (REGULAR CALENDAR)
Industrial Commission of Ohio,           :

        Respondents.                           :

---

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on July 29, 2015

---

*Michael Soto,* for relator.

*Mitchell+Pencheff, Fraley, Catalano & Boda Co., Daniel K. Boda* and *Andrew F. Fuchs,* for respondent Scott C. Williams.

*Michael DeWine*, Attorney General, and *Colleen C. Erdman,* for respondent Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 5}  In this original action, relator, The Columbus Distributing Co. requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate that portion of the June 7, 2011 order of its staff hearing officer ("SHO") that grants claim reactivation, and to enter an amended order that denies claim reactivation.

Findings of Fact:

{¶ 6}   1. On March 2, 1999, Scott C. Williams ("claimant") injured his lower back while employed as a "bulk merchandiser" for relator, a self-insured employer under Ohio's workers' compensation laws.  The industrial claim (No. 99-443261) is allowed for: "low back sprain/strain; herniated disc L5-S1."

{¶ 7}   2. On April 15, 1999, claimant underwent an MRI of his lumbar spine. Mary Oehler, M.D., the interpreting radiologist, wrote:

> IMPRESSION:
>
> Paracentral disk protrusion of L5-S1 deforming the S1 nerve root and narrowing the left lateral recess.

{¶ 8}   3. Relator last authorized treatment in this claim in February 2000 when it approved a repeat lumbar MRI.  On February 16, 2000, claimant underwent the repeat MRI.  The interpreting radiologist wrote:

> CLINICAL HISTORY Lumbar radiculopathy with low back pain radiating into the left leg and foot and numbness.
>
> COMPARISON 4/15/99.
>
> * * *
>
> FINDINGS L5-S1 Desiccated, mildly narrowed disk posteriorly. Broad central/left paracentral disk protrusion without definite evidence of nerve root or spinal sac compression. The protrusion is smaller than it was on the previous examination when it exhibited some mass effect. Small osteophyte on the left protruding into the neural foramen, but without significant neural foraminal narrowing.
>
> * * *
>
> IMPRESSION
>
> [One] Minimal central/left paracentral disk protrusion at L5-S1 without definite evidence of spinal sac or nerve root compression.

{¶ 9}  4. On December 29, 2008, claimant was examined and evaluated by Charles B. May, D.O.  In his two-page narrative report, dated December 29, 2008, Dr. May wrote:

> Currently, Mr. Williams complains of low back pain with left lateral leg numbness and left leg pain shooting to the left foot last two digits. He states that his left calf has "deteriorated." He has no myelopathic bowel or bladder symptoms.
> * * *
>
> There was left calf atrophy with the left calf measuring 44 cm in circumference and 10 cm above the lateral malleolus and the right calf measuring 49 cm in circumference, 10 cm above the lateral malleolus. He was unable to toe walk on the left. His gait was satisfactory and did not require ambulatory aids. There was a sensory loss noted in an L5-S1 distribution on the left.
>
> Mr. Williams presents to my office at this time with low back pain, left leg radicular symptoms, and left calf atrophy directly and proximately due to and caused by his 03/02/1999 work injury. There has been no interim injury to the lumbar spine according to Mr. Williams. He has had progressive deterioration of his left calf. His low back pain and left leg radicular symptoms are getting progressively worse. He would like something definitive done for his back if indicated.
>
> We have completed a form C-9 requesting authorization for the following:
>
> [One] Reactivation of Mr. Williams' claim.
> [Two] MRI scan of the lumbar scan.
> [Three] X-rays of the lumbar spine with obliques and standing lateral flexion and extension views.
> [Four] EMG with nerve conduction studies of the lumbar spine and left lower extremity.
> [Five] Spine surgery consultation.
> [Six] Further office visits to Grandview Family Practice three or four times per year.

{¶ 10}  5.  On December 31, 2008, Dr. May completed form C-9 provided by the Ohio Bureau of Workers' Compensation ("bureau").  The C-9 form is captioned: "Physician's Request for Medical Service or Recommendation for Additional Conditions

for Industrial Injury or Occupational Disease."  On the form, Dr.  May requested the items listed in his December 29, 2008 report.  Dr. May also wrote:  "Reactivate claim."

{¶ 11} 6. In January 2009, relator's third-party administrator denied the C-9 request.

{¶ 12} 7. On February 6, 2009, on form C-86, claimant moved:  "[T]hat this claim be reactivated per the C-9 request by Dr. May dated 12/31/08."  In support, claimant submitted the C-9 and the December 29, 2008 report of Dr. May.

{¶ 13} 8. On March 27, 2009, at relator's request, claimant was examined by Mark T. Finneran, M.D.  In his four-page narrative report, Dr. Finneran wrote:

> **Chief Complaint:** Mr. Williams complains that his entire left leg bothers him. The pain centers at the knee and radiates proximally and distally.
>
> * * *
>
> **Physical Examination:**
>
> * * *
>
> Inspection of the lower extremities reveals obvious wasting of the medial head of the left gastrocnemius. There appears to be wasting of the median head of the quadratus femoris but the thighs measure 49 cm in circumference bilaterally. The right calf measures 48 cm in circumference and the left calf measures 45 cm in circumference. Sensory examination reveals sensory loss in the distribution of the S1 nerve root. Motor power is strong and is provided with good effort. There is some weakness with internal rotation of the ankle. Reflexes are 2/2 at the right knee and 0/2 at the left knee. Both ankles are 0/2. Inspection of the knee reveals medial joint line tenderness. McMurray's is negative.
>
> **Discussion:** Mr. Williams is a 32-year-old man who strained his low back and herniated the L5-S1 disc in 1999. An MRI showed a disc protrusion at L5-S1 and an EMG showed an S1 radiculopathy. Mr. Williams was treated conservatively with 3 epidural steroid injections and his symptoms resolved. A repeat MRI in 2000 showed resolution of the herniated disc and an abatement of the nerve root compression. Mr. Williams began noticing

wasting in his left calf about five years ago. One year ago he began to limp from left knee pain.

**Conclusions:**

* * *

In my professional opinion there are reliable and objective clinical findings to support the diagnosis of a low back sprain strain and a herniated disc at the L5-S1 level as a direct result of the March 02, 1999 industrial injury. Based on my review of the medical records, the history provided by Mr. Williams, the serial MRIs showing resolution of the herniated disc, the lack of a need for ongoing care, and my examination today, both of the allowed conditions in this claim have resolved.

* * *

I believe that Mr. William's [sic] current complaints are attributable to conditions other than those allowed in this claim. * * * The pattern of muscle wasting is focal and very atypical; only the medial head of the gastrocnemius is atrophied while the lateral head of the gastrocnemius and the soleus are spared. Based on limited medical data I am unable to state that Mr. Williams' complaints are degenerative in nature.

* * *

In my professional opinion the services requested by Dr. May on the C-9 dated December 31, 2008 are not reasonably related to the allowed conditions in this claim, reasonably necessary for treatment of the allowed conditions in this claim and the cost is not medically reasonable. If Mr. Williams' symptoms were due to the industrial injury in this claim he would not have had a 10 year hiatus in treatment. He would not exhibit a focal neurologic deficit as he does today with the involvement of only the median head of the left gastrocnemius and left knee pain.

Even if Mr. Williams' symptoms were due to the industrial injury in this claim, reactivation of the claim would be of no medical benefit. Neurologic changes are understood to be permanent within one or two years after onset, and any neurologic changes that might have [been] addressed surgically in 1999 would now be permanent.

Mr. Williams noticed wasting 5 years after the injury. He became symptomatic 1 year ago. There is no relationship between the current symptom complex and the industrial injury 10 years ago. Therefore it is not reasonably necessary, appropriate or cost effective to perform an MRI, x-rays, an EMG, and get a consultation from the spine surgeon under this industrial claim. It is more likely than not that Mr. Williams [sic] symptoms are due to conditions other than those allowed in this claim.

{¶ 14} 9. Following an April 24, 2009 hearing, a district hearing officer ("DHO") issued an order denying claimant's February 6, 2009 motion.  The DHO's order explains:

The District Hearing Officer finds that the Injured Worker's request for authorization for the following, as requested by the 12/31/2008 C-9 of Dr. May, is denied: lumbar spine MRI, lumbar spine x-ray, EMG/NCV testing. The District Hearing Officer is not persuaded that this requested diagnostic testing is reasonably related to and reasonably necessary for the allowed conditions and industrial injury of 03/02/1999.

This order is based on the 03/27/2009 report of Dr. Finneran.

{¶ 15} 10.  Claimant administratively appealed the DHO's order of April 24, 2009.

{¶ 16} 11. Following an August 24, 2009 hearing, an SHO issued an order affirming the DHO's order of April 24, 2009.  The SHO's order explains:

The Staff Hearing Officer finds that the 12/31/2008 C-9 of Dr. May remains denied. The Injured Worker is denied authorization for a lumbar spine MRI, lumbar spine x-ray and lumbar EMG/NCV testing. The Staff Hearing Officer finds that the Injured Worker has not provided sufficient information to reasonably relate the need for these tests to the allowed conditions in the claim and has not shown that these tests are necessary. This decision is based on the 03/27/2009 report of Dr. Finneran. He found that, "There is no relationship between the current symptom complex and the industrial injury ten years ago." He went on to state that, "It is more likely than not that Mr. Williams' symptoms are due to conditions other than those allowed in this claim."

{¶ 17} 12. On September 15, 2009, another SHO mailed an order refusing claimant's administrative appeal from the SHO's order of August 24, 2009.

{¶ 18} 13. On December 17, 2009, claimant was initially examined by William R. Miely, M.D.  Dr. Miely's office note of that date states:

> **History:** Scott presents with a long history of pain in the lower lumbosacral area with radiation into the left leg. He initially had pain after lifting a case of beer. He had an MRI scan that was done in 1999 followed by epidurals. He was doing well neurologically. Today he complains of continued pain, weakness, and atrophy in his left calf.
>
> **Physical Examination:** Physical exam reveals peripheral pulses intact. There is atrophy of his medial gastroc soleus complex on the left side. Neurologically his deep tendon reflexes were 2+ and symmetrical measuring the biceps, triceps, brachioradialis, quadriceps and Achilles. He did also have weakness of his gastroc on the left side, which was a 4/5.
>
> **Review of Diagnostic Studies:** X-rays show fixed non-rib-bearing vertebrae[.]
>
> **Impression:** Radiculopathy.
>
> **Plan:** MRI. We will follow him back after.

{¶ 19} 14. On January 5, 2010, claimant underwent an MRI of his lumbar spine. The interpreting radiologist, Eric Yeh, M.D., wrote:

> IMPRESSION:
>
> [One] At L5-S1, there appears to be a disc bulge with a superimposed central disc protrusion, which abuts the ventral aspect of the thecal sac, and abuts the left greater than right descending S1 nerve roots. No definite laminectomy or laminotomy defects are identified at this level. Degenerative changes also result in mild left neural foraminal stenosis.
>
> [Two] There is mild to moderate degenerative disc disease and facet arthropathy in the remaining lumbar spine. Degenerative changes result in mild central canal stenosis at L4-L5. There are no levels of high-grade neural foraminal stenosis.

{¶ 20} 15. On January 5, 2010, Dr. Miely wrote:

**History:** He presents today after having his MRI scan done.

**Review of Diagnostic Studies:** MRI shows a recurrent disc at L5-S1 on the left side consistent with his previous injury and disc at that level, which I felt was related to his original complaint.

**Plan:** I have recommended epidural steroids. We will set that up in the near future.

{¶ 21} 16. On March 4, 2010, Dr. Miely wrote:

I first examined this patient in my office on December 17, 2009, for back and left leg pain that he relates to a work related injury from March 1999, when he lifted a case of beer. At the time of his injury, he was treated with a series of epidural steroid injections. You may refer to my notes for results of my exam.

An MRI performed on January 5, 2010, demonstrated a recurrent disc at L5-S1 on the left, consistent with his previous injury at the same level in 1999. I recommended a series of epidural steroid injections.

It is my opinion that the recurrent disc at L5-S1 on the left is related to his original injury at the same level, from March 1999.

{¶ 22} 17. On July 19, 2010, claimant filed form C-86 upon which he moved as follows:

Now comes the claimant through counsel and asks that the claim be reactivated for a recurrent disc herniation at the L5-S1 level. In addition, claimant requests authorization for a series of epidural steroid injections recommended by his treating physician, William Miely, M.D. Attach[ed] in support of this Motion is the 3/4/10 report of Dr. Miely as well as the treatment notes and 1/5/10 MRI study.

{¶ 23} 18. On January 25, 2011, at relator's request, claimant was examined by Seth H. Vogelstein, D.O., who issued a five-page narrative report.  At page two under "History," the last paragraph states:

Mr. Williams goes on to discuss that Dr. Miely informed him that the 2010 MRI was essentially the same as the 2000

study. He decided to have one epidural performed by a Dr. Fitz, which he states did not result in any change in the chronic left lower extremity numbness that he had been experiencing. He states that it did relieve a little bit of the chronic pressure in his back for about two months. He states that he had not been having any pain in his leg before the epidurals, so this was not really an issue.

{¶ 24} 19. In his report, Dr. Vogelstein responds to questions:

To respond to your questions:

[One] Are there reliable objective and clinical findings to continue to support the diagnosis of the conditions currently recognized in the claim (low back strain/sprain and HNP L5-S1)? Have either or both of these conditions, as they relate to the 03/09/99 industrial injury, resolved?

Mr. Williams' low back sprain resolved many years ago. The HNP at L5-S1 did respond extremely well to a series of epidurals, with follow up MRIs on 02/16/2000 and again on 01/05/10, revealing no continuing evidence of nerve root compression. Therefore, the pressure that was being exerted on the S1 nerve root by the L5-S1 disc noted on the 04/15/99 MRI did go on to resolve after the epidurals in 1999. Again, the subsequent MRI in 2000 documented this to the MRI in 2010 appearing essentially unchanged from the 2000 study. There continues to be no pressure for the disc being exerted on the nerve root and therefore by definition, the disc herniation at L5-S1 has resolved as well.

* * *

In my medical opinion, there has essentially been no change in the allowed disc over the last 10 years. It is my medical opinion that the disc has not re-herniated with the 2010 MRI remaining improved from the original 1999 study. Furthermore, epidurals are in the vast majority of cases not beneficial in this type of chronic situation. Again, this was essentially improved since the injured worker did have one epidural performed about 10 months ago without any significant benefit. Again, it is my medical opinion, within a reasonable degree of medical probability that additional care including epidural steroid injections is not reasonably necessary or indicated in this case, for further treatment of the allowed conditions in this claim.

{¶ 25}  20.  Following an April 19, 2011 hearing, the DHO issued an order denying claimant's July 19, 2010 motion.  The DHO's order explains:

> First, the District Hearing Officer would note that the Injured Worker's reporting of his symptoms has remained consistent throughout the history of this claim as detailed in various medical examination reports contained within the claim file. However, the 02/16/2000 lumbar MRI states the disc protrusion found at the L5-S1 level was smaller than when previously examined on 04/15/1999 and that said protrusion was without definite evidence of nerve root or spinal sac compression. Based on the 12/17/2009 office note from Dr. Miely, while it seems that Dr. Miely was aware of the 1999 MRI, there is no reference to the 2000 MRI referenced above. The next treatment note from Dr. Miely, dated 01/05/2010, details Dr. Miely's review of the Injured Worker's most recent MRI performed in 2010. Dr. Miely stated that MRI showed a "recurrent" disc at the L5-S1 level. Dr. Miely references this "recurrent" L5-S1 disc again in his 03/04/2010 letter that and he opines that this recurrent disc is related to the original injury of March, 1999.
>
> In his report, dated 01/25/2011, Dr. Vogelstein stated in the last paragraph on page 2 that Dr. Miely did, in fact, review the 2000 MRI and informed the Injured Worker the 2010 MRI was essentially the same as the 2000 MRI. If this is in fact the case, the District Hearing Officer is unsure how any disc herniation found could be classified as "recurrent" in light of the lack of any evidence of nerve root compression. While the Injured Worker has continued to have similar problems as he has subjectively been experiencing since the original injury, in light of the apparent resolution of the nerve involvement at the L5-S1 disc the District Hearing Officer is unsure as to how the allowed herniation could be the source of the Injured Worker's problems. The District Hearing Officer also notes from the 03/27/2009 report of Dr. Finneran that Dr. Finneran also questioned the relationship between the Injured Worker's symptoms and the allowed conditions in light of the "abatement" of the nerve root compression referenced by Dr. Finneran in relation to the 2000 MRI.
>
> Therefore, while the District Hearing Officer is persuaded by the Injured Worker's testimony that he continues to experience symptomatology, based on the 03/27/2009 report of Dr. Finneran and the 01/25/2011 report of Dr.

Vogelstein there is insufficient evidence demonstrating or explaining how the Injured Worker's symptoms and need for injections is related to the allowed herniation in this claim. Consequently, the Injured Worker's request for authorization for epidural steroid injections and reactivation of this claim is denied.

{¶ 26} 21. Claimant administratively appealed the DHO's order of April 19, 2011.

{¶ 27} 22. Following a June 7, 2011 hearing, an SHO issued an order that vacates the DHO's order of April 19, 2011. The SHO's order explains:

The Staff Hearing Officer vacates the District Hearing Officer's order dated 04/19/2011. The 07/19/2011 C-86 motion is granted in part and dismissed in part. The Staff Hearing Officer grants reactivation of this claim. The Staff Hearing Officer finds based upon Dr. Miely's report dated 03/04/2010 and his office notes dated 01/05/2010 and 12/17/2009 that the Injured Worker's current low back complaints are causally related to his original industrial injury. On that basis, the claim is authorized for reactivation. However, the Staff Hearing Officer does dismiss the Injured Worker's request for a series of lumbar epidural steroid injections. Dismissal of this request is based upon the fact that this request is too vague to be granted or denied. This request per the C-86 motion does not specify a specific number of epidural injections that are being requested. It only states that the series of epidural injections are being requested. This lack of specificity as to the specific number of injections being requested caused this part of the motion to be dismissed for vagueness.

The Staff Hearing Officer specifically notes that this order does not authorize any type of treatment for the claim. Only reactivation of the claim itself is authorized. If the Injured Worker requests specific treatment for this claim, said requests must be processed through the Self-Insured Employer.

{¶ 28} 23. On July 1, 2011, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 7, 2011.

{¶ 29} 24. On September 10, 2011, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order mailed July 1, 2011.

{¶ 30} 25. On February 7, 2012, claimant moved for payment of two office visits with William Miely, M.D., that occurred in December 2009 and January 2010, the January 5, 2010 MRI, and the January 26, 2010 epidural steroid injection. In support, claimant submitted Dr. Miley's office notes for the two office visits and the report of radiologist, Eric Yeh, M.D., regarding the MRI.

{¶ 31} 26. On June 4, 2012, at relator's request, Matthew D. McDaniel, M.D., conducted a medical file review. In his two-page narrative report, Dr. McDaniel opined:

> In my opinion, the requested 12/19/09 visit, 01/05/10 office visit, 01/05/10 lumbar MRI study, and 01/16/10 [sic] epidural steroid injection are not shown to be reasonably related to the industrial injury and allowed conditions. Again, the claim allowances resolved by 02/16/00, with the three lumbar epidural injections, the resolution of the compressive disc protrusion on the 02/16/00 lumbar MRI, and the subsequent eight year treatment gap. The clinical presentation on the 12/19/09 and 01/05/10 office visits, the 01/05/10 lumbar MRI, and the 01/16/10 [sic] lumbar epidural injection were for non-allowed conditions.

{¶ 32} 27. Following a June 13, 2012 hearing, a DHO issued an order denying claimant's February 7, 2012 motion. The DHO's order states reliance upon the June 4, 2012 report of Dr. McDaniel, the January 25, 2011 report of Dr. Vogelstein, and the March 27, 2009 report of Dr. Finneran.

{¶ 33} 28. Claimant administratively appealed the June 13, 2012 order of the DHO.

{¶ 34} 29. Following an October 1, 2012 hearing, an SHO issued an order that vacates the DHO's order of June 13, 2012 and grants claimant's February 7, 2012 motion. The SHO's order explains:

> The C-86 motion, filed 02/07/2012, requesting payment of office visits from Dr. Miely dated 12/17/2009 and 01/05/2010, payment of the 01/05/2010 lumbar MRI, and payment of the 01/26/2010 epidural steroid injection under x-ray guidance by Dr. Fitz is granted.
>
> The Staff Hearing Officer orders the Self-Insuring Employer to pay for the two office visits with Dr. Miely dated 12/17/2009 and 01/05/2010. Dr. Miely treated the Injured Worker and examined the Injured Worker for radiculopathy

related to the herniated disc at L5-S1. Dr. Miely also recommended an epidural steroid injection and reviewed the 1/5/2010 lumbar MRI. According to Dr. Miely's 01/05/2010 office note, the MRI showed a recurrent disc at L5-S1 on the left consistent with the previous injury and disc at that level. The Staff Hearing Officer also relies upon the 01/05/2010 lumbar MRI, which diagnosed an L5-S1 disc bulge superimposed on a central disc protrusion and which abuts the ventral aspect of the thecal sac.

The Staff Hearing Officer also relies upon the 06/07/2011 Staff Hearing Officer order. According to the 06/07/2010 [sic] Staff Hearing Officer order, the claim was reactivated based upon Dr. Miely's 03/04/2010 report and his 01/05/2010 and 12/17/2009 office notes. The Staff Hearing Officer at that time found that the Injured Worker's low back complaints were related to the industrial injury. Therefore, Dr. Miely's 12/17/2009 and 01/05/2010 office visits are found related to the 03/02/1999 industrial injury.

{¶ 35} 30. On October 24, 2012, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of October 1, 2012.

{¶ 36} 31. Earlier, in March 2012, Dr. Miely completed a C-9 requesting a series of three epidural steroid injections. Apparently, the C-9 was not filed until May 3, 2012.

{¶ 37} 32. Following an October 12, 2012 hearing, a DHO issued an order granting the C-9. The DHO's order explains:

The District Hearing Officer orders that three epidural steroid injections be authorized and paid in accordance with Bureau of Workers Compensation rules and regulations. This order is based on the office notes from Dr. Miely, which outline that this treatment is for the allowed conditions.

Each treatment issue is considered individually. While a Staff Hearing Officer denied reactivation of the claim and treatment in 2009, treatment was subsequently granted by Staff Hearing Officer order. This treatment included an epidural steroid injection given on 01/26/2010. This District Hearing Officer is in agreement with the orders that find treatment is related to the allowed conditions. The 06/04/2012 report from Dr. McDaniel was rejected by the Staff Hearing Officer on 10/02/2012 and, therefore, cannot be relied on.

{¶ 38}  33.  Relator administratively appealed the DHO's order of October 12, 2012.

{¶ 39}  34.  Following a November 26, 2012 hearing, an SHO issued an order affirming the October 12, 2012 DHO's order.  The SHO's order explains:

> Authorization is granted for a series of three epidural steroid injections for treatment of the allowed conditions.
>
> This order is based upon a finding that the requested medical services are related and necessary for treatment of the allowed conditions. This finding is based upon the office notes from Dr. Miely dated February 28, 2012.
>
> In reaching this decision, all evidence pertinent to this issue was thoroughly reviewed. However, the report from Dr. McDaniel dated June 4, 2012 was not considered because it was implicitly rejected by the Staff Hearing Officer at the hearing held on October 1, 2012. The Staff Hearing Officer vacated the District Hearing Officer's order dated June 13, 2012, which had relied upon Dr. McDaniel's report. By vacating the order, and issuing a decision contrary to the opinion of Dr. McDaniel, the Staff Hearing Officer rejected the report of Dr. McDaniel on the issue of the need for treatment, particularly whether epidural steroid injections were related and necessary for treatment of the allowed conditions. Case law precludes later consideration of the same report that was previously considered by the Industrial Commission and implicitly rejected as evidence. See **State ex rel. Zamora v. Indus. Comm.** (1989), 45 Ohio St.3d 17.

(Emphasis sic.)

{¶ 40}  35.  On December 18, 2012, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of November 26, 2012.

{¶ 41}  36.  On August 28, 2013, Dr. Miely completed a C-9 requesting a lumbar MRI and follow-up visit with Dr. Miely.  On August 27, 2013, the day before he completed the C-9, Dr. Miely wrote:

> History: He returns today. He is still having significant weakness in his left leg with marked calf atrophy.
>
> Plan: We discussed with him options. He would like to have an MRI to take a look at that.

{¶ 42} 37. The August 28, 2013 C-9 was not filed until December 27, 2013.

{¶ 43} 38. Following a March 12, 2014 hearing, a DHO issued an order granting the C-9. The DHO's order explains:

> Authorization is granted for a lumbar MRI, as requested by Dr. Miely. The District Hearing Officer finds that the Injured Worker has met his burden of proving that the requested diagnostic testing at issue is medically necessary, reasonable, and appropriate for the treatment of the allowed conditions in the claim. The District Hearing Officer relies upon the C-9 Request of Dr. Miely dated 08/28/2013, the medical report of Dr. Miely dated 08/27/2013, and the treatment notes of Dr. Miely on file.

{¶ 44} 39. Relator administratively appealed the DHO's order of March 12, 2014.

{¶ 45} 40. Following an April 29, 2014 hearing, an SHO issued an order affirming the DHO's order of March 12, 2014. The SHO's order explains:

> The Staff Hearing Officer agrees with the reasoning and decision of the District Hearing Officer in granting the request for authorization for a lumbar MRI on a diagnostic basis within Industrial Commission/Bureau of Workers' Compensation rules and regulations and usual, customary and reasonable fee guidelines based on the 08/28/2013 C-9, office notes and 08/27/2013 report of Dr. Miely. The Staff Hearing Officer also finds that this request is medically related to and reasonable and necessary for investigation into the consequences of the 03/02/1999 incident and care of the allowed conditions recognized in the claim.

{¶ 46} 40. On May 21, 2014, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 29, 2014.

{¶ 47} 41. On June 17, 2014, relator, The Columbus Distributing Co., filed this mandamus action.

Conclusions of Law:

{¶ 48} On July 19, 2010, claimant moved for claim reactivation and for authorization of a series of epidural steroid injections prescribed by Dr. Miely. At issue here is the SHO's order of June 7, 2011 that grants claim reactivation, but denies authorization of the epidural steroid injections. Essentially, relator contends that the

commission lacked authority to grant claim reactivation because the request for medical treatment was denied.

{¶ 49} Relator contends that the alleged error in granting claim reactivation subsequently caused the commission to err in its granting of three separate requests for payment of medical treatment.

{¶ 50} The first request was claimant's February 7, 2012 motion for the payment of two office visits, the January 5, 2010 MRI and the January 26, 2010 epidural steroid injection. The second request was the May 2012 C-9 requesting a series of three epidural steroid injections. The third request was the August 28, 2013 C-9 requesting a lumbar MRI and a follow-up with Dr. Miely.

{¶ 51} Thus, based upon its argument that claim reactivation was improper, relator contends that the writ must order the commission to not only vacate the SHO's order of June 7, 2011, but also the SHO's orders of October 1, 2012, November 26, 2012, and April 29, 2014.

{¶ 52} The magistrate disagrees with relator's challenge to the SHO's order of June 7, 2011 as well as its challenge to the SHO's orders of October 1, 2012, November 26, 2012, and April 29, 2014. Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 53} Parenthetically, the magistrate notes that, in a prior mandamus action, this court held the action to be premature, and on that basis, denied the writ. The earlier action was found to be premature because the commission had not yet ruled adversely to relator upon the requests for medical treatment filed subsequent to the SHO's order of June 7, 2011. Thus, relator could not show a loss or deprivation resulting from the issuance of the SHO's order of June 7, 2011. *State ex rel. Columbus Distributing Co. v. Williams,* 10th Dist. No. 12AP-494 (June 27, 2013, Memorandum Decision.)

{¶ 54} Preliminarily, the magistrate shall address the concept of claim reactivation.

{¶ 55} Effective July 16, 1990, former Ohio Adm.Code 4123-3-15 provided:

> (B) Applications to reactivate claims.
>
> (1) Except as provided in paragraph (C) of this rule, form C-85-A, "Application to Reactivate Claim," shall be used in the following situations:

* * *

**(b) Where the course of medical treatment has been completed, the physician of record having indicated that no further treatment was necessary, and subsequently the employee seeks additional medical treatment; or**

* * *

**(e) Where the claim is not in the course of consideration by the bureau or commission and, therefore, classed as inactive; in order to determine whether a claim should be regarded as "inactive," the following guidelines should be taken into consideration:**

**(i) The period of time which has elapsed since the last activity in the claim; as a general rule, a claim is considered inactive if there was no activity or request for further action in the claim within a period of time in excess of two ears;**

**(ii) The nature and type of injury or occupational disease;**

**(iii) Did the attending physician report recovery from the effect of the allowed condition or conditions with no evidence of a resulting disability.**
* * *

**(2) Such applications shall be accompanied by the proof upon which the employee relies.**

* * *

**(4) Such application shall be completed by the attending physician in those cases where additional compensation or additional medical services are sought.**

**(5) The bureau or commission may require the filing of additional proof or legal citations by either party or may make such investigation or inquiry as the circumstances may require.**

* * *

**(7) Such applications shall be determined with or without formal (public) hearing as the circumstances presented require. If the request made in the application is within the**

jurisdiction of the bureau and the matter is not contested or disputed, the bureau shall adjudicate the application in the usual manner. In all other cases, the application shall be acted upon by the industrial commission's hearing officer or as otherwise required by the rules of the commission, depending on the subject matter at issue.

{¶ 56} Effective November 1, 2004, Ohio Adm.Code 4123-3-15 was substantially amended.  It was further amended effective February 10, 2009.

{¶ 57} On the date that claimant moved for claim reactivation and authorization of a series of epidural steroid injections, i.e., on July 19, 2010, former Ohio Adm.Code 4123-3-15 stated:

(A) Requests for subsequent actions when a state fund claim has not had activity or a request for further action within a period of time in excess of thirteen months.

(1) The bureau shall consider a request for subsequent action in a claim in the following situations:

(b) Where the employee seeks to have the bureau or commission grant a new award of compensation or to settle the claim * * *

(e) * * * [T]he bureau, in consultation with the MCO assigned to the claim, shall issue an order on a medical treatment reimbursement request in a claim which has not had activity or a request for further action within a period of time in excess of thirteen months as follows:

(i) * * * The bureau's order shall address both the causal relationship between the original injury and the current incident precipitating the medical treatment reimbursement request in a claim and the necessity and the appropriateness of the requested treatment.

* * *

(4) The bureau or commission may require the filing of additional proof or legal citations by either party or may make such investigation or inquiry as the circumstances may require.

* * *

> (6) Such requests shall be determined with or without formal (public) hearing as the circumstances presented require. If the request is within the jurisdiction of the bureau and the matter is not contested or disputed, the bureau shall adjudicate the request in the usual manner. In all other cases, the request shall be acted upon by the industrial commission's hearing officer or as otherwise required by the rules of the commission, depending on the subject matter.

{¶ 58} According to relator, the June 7, 2011 SHO "exceeded the scope of his jurisdiction" when he reactivated the claim in the absence of granting a specific benefit. (Reply brief, 3.)   According to relator, "[w]ithout authorization of any treatment — **a substantive benefit** — there was nothing in the claim to reactivate."   (Emphasis sic.) (Reply brief, 3.)

{¶ 59} Relator also contends that claim reactivation violated "[d]ue process" in the absence of granting a specific benefit.   (Reply brief, 5.)   Relator also posits that the "request for reactivation of his claim cannot be separated from his request for treatment." (Reply brief, 2.)   Relator states "[n]o version of Ohio Admin. Code 4123-3-15 supports what the Commission claims."   (Reply brief, 2.)

{¶ 60} Other than a mere citation to Ohio Adm.Code 4123-3-15, relator cites to no relevant authority to support its position on "jurisdiction" or "[d]ue process."

{¶ 61} Here, respondent commission endeavors to answer relator's challenge by analyzing former Ohio Adm.Code 4123-3-15:

> Here, in compliance with the code, the commission determined the appropriateness of additional treatment, even if specific treatment could not be addressed until Williams clarified his request for it. Williams moved, via a C-86 motion, to reactivate his claim and submitted the requisite proof, in accordance with the code requirements. As the SHO found, Dr. Miely's treatment notes, his letter explaining why epidural steroid injections were requested, and the January 2010 MRI were sufficient to explain that the recurrence of Williams' disc herniation warranted further medical treatment. * * * Thus, the commission's June 7, 2011 order is supported by evidence establishing the appropriateness of additional treatment in Williams' claim.
>
> Regarding the specific treatment requested, the commission acted within its discretion to defer adjudication of that

portion of Williams' motion. Significantly, Ohio Adm.Code 4123-3-15(B)(5) specifies that the commission may require the parties to file additional proof, or may make further inquiry or investigation as is required. As the SHO explained, Williams' medical proof established that his current low back symptoms established a recurrence of his work-related disc herniation, thereby warranting claim reactivation. However, the SHO dismissed as vague the specific treatment request because it did not specify the number of injections Dr. Miely planned to perform. Contrary to CDC's argument, the SHO acted in accordance with the code in requesting clarification for the treatment request before granting that portion of Williams' motion. Thus, the commission acted within its discretion to adjudicate the appropriateness of the medical treatment due to recurrence of the disc herniation, even if it did not immediately grant the specific treatment requested.

* * *

By means of his C-86 motion, Williams placed two issues before the commission: reactivation of the claim for recurrence of the allowed disc herniation at L5-S1 and authorization of medical treatment for that condition in the form of a series of epidural steroid injections. * * * In its June 7, 2011 order, the commission acted within its discretion to grant reactivation of Williams' claim, but dismiss the portion of his request related to the authorization of medical treatment as too vague. * * * Notably, at all levels of commission hearings, the hearing officers considered Williams' requests both for claim reactivation and a series of epidural steroid injections. * * * CDC is incorrect that the sole issue before the commission was whether Williams could receive authorization for medical treatment or that jurisdiction was limited to solely that question. The SHO first considered the threshold question of whether claim reactivation was appropriate, and then proceed to the merits of the treatment request, but found the request too vague. If the SHO were to have found against claim reactivation, he necessarily would have had to deny the treatment request because the claim would have been medically inactive. In contrast, a claim can be active, even if there are no currently allowed treatment requests. Thus, the SHO did not divest the commission of jurisdiction by finding the medical treatment request too vague.

(Respondent Industrial Commission's brief, 11-13, 16-17.)

{¶ 62} In the magistrate's view, the commission's analysis of former Ohio Adm.Code 4123-3-15 as it applies here is reasonable.  Significantly, relator fails to challenge the commission's analysis with any specific interpretation of its own.

{¶ 63} The issue here does not give rise to an occasion for the magistrate to reinterpret the commission's interpretation of former Ohio Adm.Code 4123-3-15.  The commission's interpretation of its own rules is entitled to due deference from this court. *State ex rel. Schaengold v. Pub. Emp. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 23.

{¶ 64} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).